# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

TORIN TYRELL DYSON,           )
                                     )
       Petitioner,            )
                                     )
    vs.                         )     **Case No. 4:06 CV 971 CDP(LMB)**
                                     )
DAVE DORMIRE,[1]           )
                                     )
       Respondent.       )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

     This matter is before the court on the petition of Torin Tyrell Dyson for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

## Procedural History

     Petitioner is confined at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. See Resp't Ex. C at 110-14. On October 10, 2002, petitioner was found guilty after a jury trial of three counts of first degree murder and three counts of armed criminal action. See id. at 104-09. Petitioner was sentenced to three terms of life imprisonment for the first degree murder counts and three terms of life imprisonment for the armed criminal action counts. See id. at 110-14.

---

[1]Petitioner has been transferred from the Eastern Reception, Diagnostic & Correctional Center to the Jefferson City Correctional Center. As such, Dave Dormire, Superintendent of the Jefferson City Correctional Center, is the proper respondent.

Petitioner raised four points on direct appeal of his convictions. See Resp't Ex. D. Petitioner first argued that the trial court abused its discretion in denying petitioner's motion for severance and permitting the State to try all six counts in a single trial. See id. at 14. Petitioner next claimed that the trial court abused its discretion in overruling petitioner's objection to Aqueelah Beyah's testimony because her statements were inadmissible hearsay. See id. at 16. In his third point, petitioner argued that the trial court erred in overruling petitioner's motions for judgment of acquittal as to Count I because the State did not prove that offense beyond a reasonable doubt. See id. at 17. Finally, petitioner claimed that the trial court erred in overruling petitioner's objection to the State's closing argument in which the prosecutor informed the jury that it could find petitioner guilty of first degree murder if either he or Brian Warren deliberated because this was a misstatement of the law. See id. at 18. On January 27, 2004, the Missouri Court of Appeals for the Eastern District affirmed the judgment of the trial court. See Resp't Ex. G.

On July 1, 2004, petitioner filed a pro se motion for post-conviction relief pursuant to Rule 29.15. Resp't Ex. I at 3-18. On November 16, 2004, after appointment of counsel, petitioner filed an amended motion. Id. at 25-44. Petitioner argued that he received ineffective assistance of counsel because: (1) trial counsel failed to locate, interview, and call as a witness Tracey Tyson; (2) trial counsel advised petitioner that petitioner could not testify on his own behalf at trial; and (3) trial counsel failed to raise the issue at trial that Brian Warren was acting in petitioner's defense when he shot Herbert Robinson. See id. On March 17, 2005, the motion court denied petitioner's motion. Id. at 49-52.

On April 26, 2005, petitioner filed a notice of appeal from the denial of post-conviction relief. Id. at 55-57. Petitioner raised two points on appeal of the denial of post-conviction relief.

See Resp't Ex. J.  Petitioner first argued that the motion court clearly erred in denying his motion because he was denied effective assistance of counsel in that trial counsel advised petitioner he could not testify on his own behalf at trial.  See id.  Petitioner next argued that he was denied effective assistance of counsel in that trial counsel failed to raise the issue at trial that Brian Warren acted in petitioner's defense when he shot Herbert Robinson.  See id.  On February 28, 2006, the Missouri Court of Appeals for the Eastern District affirmed the denial of post-conviction relief.  See Resp't Ex. L.

On June 21, 2006, petitioner filed a petition for writ of habeas corpus, raising the following grounds for relief: (1) the trial court erred in denying petitioner's motion for severance; (2) the trial court erred in overruling petitioner's objection to Aqueelah Beyah's testimony about statements made by Brian Wallace; (3) the State did not produce sufficient evidence of deliberation with regard to the count of first-degree murder in the death of Herbert Robinson; (4) the prosecutor's closing argument that petitioner may be found guilty if either he or Brian Warren deliberated was improper; (5) trial counsel was ineffective for telling petitioner he could not testify at trial; (6) trial counsel was ineffective for failing to present the defense that Brian Warren acted in defense of petitioner when he shot Herbert Robinson; (7) direct appeal counsel was ineffective for failing to argue on appeal that the trial court erred in admitting Glenn Robinson's identification of Brian Wallace and a photograph of the line-up that Mr. Robinson observed; (8) direct appeal counsel was ineffective for failing to argue that the trial court erred in allowing the State to present evidence from unnamed sources about the investigation of petitioner; (9) direct appeal counsel was ineffective for failing to argue that the trial court erred in admitting hearsay statements of Brian Wallace; (10) direct appeal counsel was ineffective for failing to argue that the trial court erred in allowing the State to adduce evidence that Brian Wallace's fingerprints were found at the crime

scene; (11) direct appeal counsel was ineffective for failing to argue that the trial court erred in overruling petitioner's objection to the prosecutor's mention of the death penalty in voir dire; (12) direct appeal counsel was ineffective for failing to argue that the trial court erred in overruling petitioner's motion to exclude the testimony of John Voglan; and (13) direct appeal counsel was ineffective for failing to argue that the trial court erred in overruling petitioner's objections to the introduction of Brian Wallace's statements through the testimony of Randi Cohns. (Doc. No. 3). On August 24, 2006, respondent filed a Response to Order to Show Cause. (Doc. No. 7). On November 20, 2006, petitioner filed a Traverse. (Doc. No. 8).

## Facts

Petitioner was charged with three counts of first degree murder and three counts of armed criminal action stemming from two separate incidents. Petitioner challenges the sufficiency of the evidence to support his conviction for the murder of one victim, Herbert Robinson. Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts. Herbert Robinson lived in the lower portion of a two-family flat at 3915 Compton in the City of St. Louis, with his girlfriend, Ronetta Simmons. See Resp't Ex. A at 216, 217, 284. Herbert's cousin, Glenn, lived in the flat above Herbert. Id. at 216.

On March 15, 2001, petitioner and Brian Warren had a conversation with Randi Cohns about buying drugs from Herbert Robinson. Id. at 476. Petitioner and Mr. Warren asked Ms. Cohns to take them to Herbert's house to buy drugs, but Ms. Cohns was unable to at that time. Id. at 476. Glenn Robinson was sleeping in the living room of Herbert Robinson's home that evening. Id. at 219-21. At some point, Glenn woke up and saw Herbert on the couch, and went back to sleep. Id. at 221-222. Glenn awoke again when he heard the front door swing open and

hit a wall.  Id. at 222.  Glenn saw Herbert lying on the floor in the hallway.  Id..  Petitioner was on top of Herbert and the two were struggling over a gun.  Id. at 223.  Herbert and petitioner each had a hand on the gun.  Id. at 224.  Glenn went into the hallway to help Herbert.  Id. at 223.  Brian Warren pointed a gun at Glenn and told him to get back into the living room, and Glenn complied.  Id. at  225-26.

Herbert's girlfriend, Ronetta Simmons, was awakened when she heard arguing and cursing.  Id. at 287.  Ms. Simmons went into the hallway and Mr. Warren pointed a gun at her.  Id. at 290.  Herbert asked Mr. Warren not to shoot because Ms. Simmons had children.  Id.  Ms. Simmons ran out the back door of the house and went next door to her cousin's house to get help.  Id. at 292.  Glenn stepped back into the hallway when he heard Ms. Simmons.  Id. at 228.  Mr. Warren told Glenn to get back before he killed him and Glenn went back into the living room.  Id. at 228-29.  Glenn offered the men money if they would leave Herbert alone.  Id. at 229.  Herbert and petitioner were screaming at each other.  Id.  When Glenn walked into the hallway again, Mr. Warren put the gun to Glenn's head and told him not to come out of the living room again or he would kill him.  Id. at 230-31.  Glenn went back into the living room.  Id. at 231.

Mr. Warren started hitting Herbert in the head with his gun.  Id. at 232.  Glenn approached the hallway again and Mr. Warren told him to get back.  Id. at 232-33.  Petitioner told Mr. Warren to shoot Herbert.  Id. at 231.  Mr. Warren told petitioner that he could not shoot Herbert because petitioner was in the way because he was on top of him.  Id. at 282.   Glenn heard a shot and ducked behind the couch.  Id. at 233.  Glenn then heard more shots.  Id.  After the shooting stopped, Glenn came out from behind the couch and found Herbert lying on his back on the floor of the living room.  Id. at 235-36.  Glenn found a gun in the hallway with no clip.  Id. at 246-47.

In the early morning hours of March 16th, Mr. Warren called Randi Cohns and requested that Ms. Cohns meet him and petitioner at Tower Grove Park.  Id. at 483.  On her way to meet them, Ms. Cohns passed the Robinson residence and saw police officers and police tape.  Id. at 484.  When Ms. Cohns arrived at Tower Grover Park, she saw petitioner and Mr. Warren.  Id.  Mr. Warren asked Ms. Cohns if she had been by the Robinson residence and, if so, what was going on.  Id. at 485.  Mr. Warren told Ms. Cohns that he and petitioner had gone to the Robinson residence and that when Herbert came to the door, they told him they wanted to purchase some heroin.  Id. at 485-86.  When Herbert returned to the door with the drugs, Mr. Warren revealed a gun and said "[w]e want it all."  Id. at 487.  Mr. Warren and petitioner noticed that Herbert had a gun.  Id.  Petitioner said that he and Herbert began to struggle over Herbert's gun.  Id..  Mr. Warren indicated that he pointed his gun at Glenn Robinson and told him to get back in the living room.  Id. at 488.  Mr. Warren said that he saw Herbert point his gun at petitioner and, not knowing that petitioner had popped the clip off the gun during the struggle, Mr. Warren started shooting.  Id.  Petitioner said that Mr. Warren did not know that he had popped the clip out and had he known that, he probably would not have shot Herbert.  Id. at 489.  Petitioner was standing next to Mr. Warren during this conversation and did not object to anything Mr. Warren said.  Id. at 488-89.

Glenn Robinson later picked petitioner out of a live line-up as the person he saw wrestling on the floor with Herbert.  Id. at 256.  Glenn picked Mr. Warren out of another line-up.  Id. at 258.

In addition to being convicted of killing Herbert Robinson, petitioner was convicted of murdering Dirk Austell and Helana Murphy.

**Discussion**

**A.     Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §

2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct.

1495, 146 L.Ed.2d 389 (2000).  With respect to the "contrary to" language, a majority of the

Court held that a state court decision is contrary to clearly established Federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of

law" or if "the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts."  529 U.S. at 413, 120 S.Ct. 1523.  Under the "unreasonable application"

prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal

rule from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of

the prisoner's case."  Id.  Thus, "a federal habeas court making the 'unreasonable application'

inquiry should ask whether the state court's application of clearly established federal law was

objectively unreasonable." Id. at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. 1522.

## B.    Procedural Default

Petitioner acknowledges in his petition that grounds seven through thirteen are procedurally defaulted because his attorney failed to raise them on appeal from the denial of his post-conviction relief motion. It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986) (internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994). If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S. Ct. 1080, 99 L.Ed.2d 239 (1988).

In this case, petitioner accurately notes that he defaulted grounds seven through thirteen by failing to raise them on appeal from the denial of post-conviction relief. Petitioner attempts to

show cause by arguing that Missouri's procedure for litigating ineffective assistance of appellate counsel claims is deficient in protecting petitioner's constitutional rights because post-conviction relief counsel could refuse to raise ineffective assistance of appellate counsel claims thereby resulting in the procedural default of those claims. Petitioner quotes <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) to the effect that default may be excused if it is the result of ineffective assistance of counsel "in a matter external to the defense and imputed to the State." None of petitioner's claims seven through thirteen are external to the defense or may be imputed to the State. Petitioner's argument lacks merit. Missouri Supreme Court Rule 29.15(a) specifically authorizes claims of ineffective assistance of appellate counsel to be brought in a Rule 29.15 post-conviction relief motion. As noted above, in considering the issue of default, a federal court must give deference to state courts and should place great importance on state procedural rules. <u>See</u> <u>Buckley</u>, 892 F.2d at 718. If petitioner failed to use the procedure provided by Rule 29.15 to raise the claims seven through thirteen, he cannot argue that his failure is "imputed to the State." Petitioner fails to establish "cause" for his procedural default. As such, this court need not address the "actual prejudice" prong of the inquiry. <u>See</u> <u>Leggins</u>, 822 F.2d at 768.

A federal habeas court may also reach the merits of procedurally defaulted claims where the petitioner can demonstrate that a "miscarriage of justice" exception applies. This narrow exception is limited to extraordinary circumstances where actual innocence can be demonstrated. <u>See</u> <u>Murray</u>, 477 U.S. at 496, 106 S. Ct. 2649. Petitioner must show that a constitutional violation "probably resulted" in the conviction of an innocent person. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 326-29, 115 S. Ct. 851, 867-68, 130 L.Ed.2d 808 (1995). Put another way, the petitioner must

"show that it is more likely than not that 'no reasonable juror' would have" found petitioner guilty beyond a reasonable doubt.  Id. at 329, 115 S. Ct. 867.

Petitioner does not allege that he overcomes the procedural default by demonstrating that he is "actually innocent."  Accordingly, the undersigned recommends that grounds seven, eight, nine, ten, eleven, twelve, and thirteen be dismissed as procedurally defaulted

## C.    Petitioner's Claims

Petitioner alleges thirteen grounds for relief.  As previously discussed, petitioner has procedurally defaulted grounds seven through thirteen.  Petitioner's remaining grounds for relief fail on their merits.

## 1.    Ground One

In his first ground for relief, petitioner argues that the trial court erred in denying his motion for severance.  Petitioner contends that counts one and two should have been severed from the remaining counts because the offenses were not of the same or similar character nor were they part of the same transaction or common scheme or plan as the remaining counts.

Petitioner raised this claim in his direct appeal.  The Missouri Court of Appeals found that joinder of the two murder cases was proper because in both cases, the State proved that petitioner robbed a drug dealer in the drug dealer's home in the early morning hours, and subsequently murdered that drug dealer, all in concert with Mr. Warren.  See Resp't Ex. G at 4.  The Court then held that the trial court did not err in denying petitioner's motion for severance.  The Court stated as follows:

> [Petitioner's] arguments are without merit.  When evidence relating to each offense is distinct and uncomplicated, and the jury is properly instructed to return separate verdicts for each offense charged, there is no abuse of discretion in refusing to sever the counts. [citation omitted].  The prosecutor presented each offense distinctly and simply with separate verdict directors offered regarding each murder.  There was nothing before the trial court that would have caused it to believe a jury could not distinguish between the

evidence offered as to each set of offenses and apply that evidence to the appropriate occurrence. Point I is denied.

Id. at 5.

"To obtain habeas relief for failure to sever, [petitioner] must show that 'the failure to grant severance rendered the trial "fundamentally unfair."'" Wharton-El v. Nix, 38 F.3d 372, 374 (8th Cir. 1994) (quoting Hollins v. Dep't of Corrections, 969 F.2d 606, 608 (8th Cir. 1992)). This is a heavy burden. Hollins, 969 F.2d at 608. See also Robinson v. Wyrick, 735 F.2d 1091, 1094 (8th Cir. 1984) (joinder of offenses in single trial is a matter of trial court discretion under both Missouri and federal law and the decision may not normally be disturbed on review). Further, a cautionary instruction to the jury that they must consider each count separately is an indication that the failure to grant severance does not render the trial fundamentally unfair. See Wharton-El, 38 F.3d at 375.

The decision of the Missouri Court of Appeals is not contrary to or an unreasonable application of clearly established federal law. The Court found that the offenses were properly joined because the murders both involved the robbery and murder of drug dealers, the same perpetrators, and took place at similar locations and times. Further, as the Court noted, the jury was properly instructed that each offense was to be considered separately. Petitioner is unable to demonstrate that the failure to grant severance rendered the trial fundamentally unfair.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

## 2.      Ground Two

In his second ground for relief, petitioner argues that the trial court erred in overruling his objection to Aqueelah Beyah's testimony regarding statements made by Brian Wallace about the murders of Dirk Austell and Helana Murphy. Petitioner contends that Ms. Beyah's testimony was

inadmissible hearsay because the statements occurred after the crime was completed, outside of petitioner's presence, and were not made in furtherance of the conspiracy.

Petitioner raised this claim in his direct appeal. The Missouri Court of Appeals held as follows:

> Aqueelah Beyah ("Beyah"), [petitioner's] girlfriend at the time of the shootings, testified [petitioner] told her he planned to rob and murder Austell approximately one week prior to the shootings. [Petitioner] and Warren came to Beyah's house after the Austell and Murphy shootings carrying a big black duffel bag with two guns, videos, a video camera, and video games. After [petitioner] left, Warren detailed to Beyah how the shootings occurred. Over [petitioner's] objection, Beyah testified that Warren instructed her to discard the duffel bag and to make sure no one saw her do it. Beyah further testified that she threw the bag away and that Warren was angry with her for doing so.
> Despite being made outside of [petitioner's] presence, Warren's statements further the conspiracy by disposing of the stolen property from the crime scene. Additionally, the statements could be seen as an attempt to conceal the crime. In either instance, the statements would be admissible under the co-conspirator hearsay exception. Point II is denied.

Resp't Ex. G at 7.

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent constitutional violation. See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

Co-conspirator statements "fall within a firmly rooted hearsay exception." <u>United States v. Reyes</u>, 362 F.3d 536, 540-41 (8th Cir. 2004). "When a statement satisfies the requirements for a co-conspirator statement under Federal Rule of Evidence 801, both the Rules of Evidence and the Confrontation Clause allow the government to introduce the statement through a witness who heard the statement, even if the government cannot show that the co-conspirator is unavailable." <u>Id.</u> at 541.

The trial court's admission of Mr. Warren's statements did not constitute a due process violation. Ms. Beyah testified that Mr. Warren instructed her to throw away the duffel bag and that she disposed of the duffel bag and its contents. <u>See</u> Resp't Ex. A at 621-24. The Missouri Court of Appeals found that Mr. Warren's statements furthered the conspiracy by disposing of the stolen property from the crime scene and were thus admissible under the co-conspirator hearsay exception. The statements would also be admissible under Federal Rule of Evidence 801(d)(2)(E), as a co-conspirator statement made in furtherance of the conspiracy. The statements were made by a co-conspirator, Mr. Warren, to Ms. Beyah, who was expected to further the conspiracy by disposing of property petitioner and Mr. Warren had taken from the Austell/Murphy household after the murders.

Further, even if the statements were not admissible under the co-conspirator exception, petitioner is unable to demonstrate prejudice. Petitioner himself told Ms. Beyah that he intended to rob and kill Dirk Austell. <u>See</u> Resp't Ex. A at 612, 614. Mr. Austell and Ms. Murphy were killed with the same gun used to kill Herbert Robinson. <u>See</u> <u>id.</u> at 565. Due to this evidence presented of petitioner's guilt, petitioner cannot show that the admission of Mr. Warren's statements affected the trial's outcome.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.**     **Ground Three**

In his third ground for relief, petitioner argues that the evidence presented at trial was insufficient to support his conviction for the first degree murder of Herbert Robinson because the State did not produce sufficient evidence of deliberation.

Petitioner raised this claim in his direct appeal.  The Missouri Court of Appeals held as follows:

> Deliberation means "cool reflection for any length of time no matter how brief." Section 565.002(3).  Here, there is ample evidence [petitioner] deliberated for a brief period of time prior to Robinson's death, despite his contention that the death occurred during a struggle.  Initially, Warren and [petitioner] set out to rob Robinson of his heroin and money.  When Robinson refused and displayed a gun, a struggle broke out.  During the struggle, [petitioner] ended up on the floor on top of Robinson.  At some point, [petitioner] ejected the clip from Robinson's pistol so as to disable the weapon.  Despite the impossibility of Robinson being able to fire the gun [petitioner] pleaded with Warren to help him by shooting Robinson.  Warren could not shoot immediately because [petitioner] was in the way.  Subsequently, [petitioner] freed himself, and Warren fatally wounded Robinson, firing several shots into Robinson's body.  Point III is denied.

Resp't Ex. G at 8.

The standard for reviewing the sufficiency of the evidence is set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).  In <u>Jackson</u>, the United States Supreme Court held that the appropriate inquiry under due process for reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319, 99 S. Ct. 2789.  Further, "[t]he state is 'not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.'"  <u>Flieger v. Delo</u>, 16 F.3d 878, 883

(8th Cir. 1994) (quoting <u>Perez v. Groose</u>, 973 F.2d 630, 634 (8th Cir. 1992)).  The federal court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and [] must defer to that resolution."  <u>Miller v. Leapley</u>, 34 F.3d 582, 585 (8th Cir. 1994).  This Circuit has "recognized that the verdict 'may be based in whole or in part on circumstantial evidence.' "  <u>Hill v. Norris</u>, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting <u>United States v. Anderson</u>, 78 F.3d 420, 422 (8th Cir. 1996)).

Petitioner's claim that the evidence was insufficient for the jury to find deliberation is without merit.  Deliberation is defined as "cool reflection for any length of time no matter how brief."  Section 565.002(3) RSMo (2000).  The evidence presented at trial reveals that petitioner disarmed Mr. Robinson during a struggle, asked Mr. Warren to shoot Mr. Robinson, and then moved out of the way to allow Mr. Warren to shoot several shots at Mr. Robinson, resulting in his death.  A rational juror could find from this evidence that petitioner acted with deliberation.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

**4.**    <u>**Ground Four**</u>

In his fourth ground for relief, petitioner argues that the prosecutor's closing argument that petitioner may be found guilty if either he or Brian Warren deliberated misstated the law and deprived him of due process.

During the State's closing argument, the following colloquy occurred regarding the murder of Helana Murphy and Dirk Austell:

> When you look at the instructions on these counts, they're a little different than the instruction on the first two counts, because on these counts the elements are the same, but the Court has told you it makes no difference whether Brian Warren or Torin Dyson killed either of those two people as long as one of them did it, either one of them it says.  It doesn't make any difference as long as one of them, either one of them knew that's what was going to happen.  Either one of them deliberated.  That's murder one.

[DEFENSE COUNSEL]: Objection, Your Honor. That's a misstatement of the law. May we approach?

THE COURT: The jury will be guided by the instructions.

[DEFENSE COUNSEL]: That's a misstatement of the law. May we approach?

(The following proceedings were had at the bench:)

[DEFENSE COUNSEL]: I believe the prosecutor just indicated to the jury that either one of these people could deliberate, and that would constitute murder in the first degree. That's absolutely not the case. There has to be a determination that this defendant deliberated, and you neglected to mention it when you were going through verdict Count 1 that, with the purpose of promoting the death of Dirk Austell, the defendant acted with Brian Warren and did so with deliberation. We're requesting a mistrial.

[PROSECUTOR]: You interrupted me before I got through the dog-gone instruction.

THE COURT: I believe that's paragraph third. I believe that is the point he was at.

[DEFENSE COUNSEL]: You also neglected to mention--on the murder in the first degree, you indicated that there only needed to be a common purpose to commit the crime and not there be deliberation, which is required.

THE COURT: The jury is guided by the instructions of the Court. Your request is denied.

(The following proceedings were had in open court:)

THE COURT: The jury is guided by the instructions of the Court.

[PROSECUTOR]: As to these two murders, the instructions tell you the defendant or Brian Warren caused the death of Dirk Austell, and they also say that about Helana Murphy. The defendant or Brian Warren knew or was practically certain what they were doing. The defendant or Brian Warren deliberated. That means murder one happens. After you find that, find the defendant guilty, you must find Torin Dyson aided and encouraged, wanted that to happen. That applies to all the murders in the first degree. You act with and you do it with deliberation on all the murder in the first degrees. A murder in the second degree you merely act. You don't have to deliberate.

Resp't Ex. A at 714-16.

Petitioner raised this claim in his direct appeal. The Missouri Court of Appeals found as follows:

The record reflects the prosecutor generally discussed Count I, which charged [petitioner] as an accomplice who aided and encouraged Warren to commit the offense of murder in the first degree. The prosecutor told the jury he was paraphrasing and they would be able to read the instruction for themselves. Later, [petitioner] objected when the prosecutor stated if either [petitioner] or Warren deliberated, then they are both guilty. The trial court overruled [petitioner's] objection, and the prosecutor continued to explain to the jury that they had to find [petitioner] aided or encouraged Warren in the murders in order to be convicted. The trial court did not abuse its discretion with respect to overruling [petitioner's] objection to the prosecutor's comments because the State has the right to explain the instructions to the jury so long as the law is not misstated. State v. Johnston, 957 S.W.2d 734, 754 (Mo. banc 1997). Point IV is denied.

Resp't Ex. G at 8-9.

To prevail on a due process claim based on comments by the prosecutor, a petitioner must show that the prosecutor's comments "were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Kellogg v. Skon, 176 F.3d 447, 451 (8th Cir. 1999)(quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)). See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). "Under this standard, a petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety, the verdict probably would have been different.'" Kellogg, 176 F.3d at 451 (quoting Hamilton, 809 F.2d at 470). In determining whether the prosecutor's argument rendered the trial fundamentally unfair, a federal habeas court must consider the totality of the circumstances. See id.

In the instant case, the prosecutor's remarks did not render the trial fundamentally unfair. The Missouri Court of Appeals found that the prosecutor did not misstate the law. Even if the prosecutor's initial statements were unclear, the prosecutor later fully explained the instruction. The record reveals that, after defense counsel's objection, the prosecutor accurately explained to the jury that once the jury found that the crime of first degree murder had occurred, the jury had to further find that petitioner aided and encouraged and that he did so with deliberation. As such,

petitioner has not met his burden of showing a reasonable probability that absent the prosecutor's remark, the jury's verdict would have been different.

Accordingly, the undersigned recommends that this ground for relief be denied.

## 5.     <u>Ground Five</u>

In his fifth ground for relief, petitioner argues that he received ineffective assistance of counsel when trial counsel advised him not to testify on his own behalf.

Petitioner raised this claim in his post-conviction relief motion and in his appeal from the denial of post-conviction relief.  The Missouri Court of Appeals held as follows:

> The record before us reveals [petitioner] understood his right to testify and that counsel's actions constituted sound trial strategy.  At the evidentiary hearing, [petitioner] testified that his trial counsel and the trial judge informed him that he had a right to testify.  Although [petitioner's] attorney acknowledged she advised [petitioner] not to testify, she also testified that she explained to [petitioner] it was his choice.  [Petitioner] admitted at the evidentiary hearing that his counsel discussed with him the reasons she did not want him to testify.
>
> At the evidentiary hearing trial counsel testified to her reasons for not wanting [petitioner] to testify.  Here, [petitioner] was charged with three murders and three counts of armed criminal action, in one proceeding.  Additionally, [petitioner] had pled guilty to three prior crimes.  Thus, [petitioner's] testimony could not be limited to one particular offense[2] and the jury would have heard about [petitioner's] prior convictions.  <u>See</u> <u>Halsip v. State</u>, 717 S.W.2d 533, 538 (Mo. App. S.D. 1986) ("Even had he wished to do so, as a prior conviction might have been revealed in cross-examination, advising movant not to testify was a matter of trial strategy.").  Based upon the record, we find that counsel's advice to [petitioner] not to testify constitutes permissible trial strategy.

Resp't Ex. L at 3-4 (footnote in original).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687,

---

[2]Although [petitioner] was being tried for all three murders in one proceeding, [petitioner] wanted to limit his testimony to one of the murders.

104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S. Ct. 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S. Ct. 2067.

The question is whether trial counsel's performance, when viewed in this light, "fell outside the wide range of professionally reasonable performance." Parker v. Bowersox, 94 F.3d 458, 461 (8th Cir. 1996) (citing Strickland, 406 U.S. at 687, 104 S. Ct. 2064). A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. 2065).

The decision of the Missouri Court of Appeals is not contrary to or an unreasonable application of clearly established federal law. The Court properly applied Strickland and determined that trial counsel's decision to advise petitioner not to testify constituted reasonable trial strategy. At the evidentiary hearing held in connection with petitioner's post-conviction relief motion, petitioner acknowledged that the trial judge advised him of his right to testify. See Resp't Ex. H at 14-17. Petitioner's trial counsel testified that she advised petitioner not to testify, although the decision whether to testify was petitioner's alone. See id. at 30. Counsel's decision to advise petitioner not to testify was reasonable in light of petitioner's prior convictions and petitioner's desire to testify regarding only one of the murders.

Accordingly, the undesigned recommends that petitioner's fifth ground for relief be denied.

**6.     Ground Six**

In his sixth ground for relief, petitioner argues that he received ineffective assistance of counsel when trial counsel failed to present the defense that Brian Warren acted in defense of petitioner when he shot Herbert Robinson. Petitioner contends that counsel should have called petitioner as a witness to testify regarding this defense.

Petitioner raised this claim in his post-conviction relief motion and on appeal from the denial of post-conviction relief. The Missouri Court of Appeals held as follows:

> As discussed thoroughly in Point I, it was reasonable trial strategy to advise [petitioner] not to testify. Further, the record reveals that trial counsel presented evidence that Brian Warren acted in defense of [petitioner] when he shot the victim, Herbert Robinson. Thus, facts that [petitioner] would have testified to in regard to his defense-of-others defense were already before the jury, thereby making [petitioner's] testimony cumulative.

Resp't Ex. L at 4.

The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law. The undersigned has found that counsel's decision to advise petitioner not to testify was reasonable trial strategy. Further, as the Court noted, trial counsel presented evidence that Mr. Warren acted in defense of petitioner when he shot Mr. Robinson. As such, petitioner's testimony that Mr. Warren was defending him would have merely been cumulative.

Accordingly, the undersigned recommends that petitioner's sixth ground for relief be denied.

**D.     Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v.

Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the petition of Torin Tyrell Dyson for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __1st__ day of September, 2009.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE